**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>CAMP MYSTIC, LLC; NATURAL FOUNTAINS PROPERTIES, INC.; MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.; and MYSTIC CAMPS MANAGEMENT, LLC,<br><br>Debtors. | Chapter 11<br><br>Case No. 26-90621 (CML)<br><br>(Jointly Administered)<br><br>26-MC-________________ |
| CAMP MYSTIC, LLC; NATURAL FOUNTAINS PROPERTIES, INC.; MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.; and MYSTIC CAMPS MANAGEMENT, LLC,<br><br>Movants,<br><br>v.<br><br>WARREN BELLOWS, *et al.,*<br><br>Respondents. | Case No. 1:26-cv-01916<br><br>United States District Court for the Western District of Texas Austin Division<br><br>(Removed From 459th Judicial District Court, Travis County, Texas) |
| CAMP MYSTIC, LLC; NATURAL FOUNTAINS PROPERTIES, INC.; MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.; and MYSTIC CAMPS MANAGEMENT, LLC,<br><br>Movants,<br><br>v.<br><br>E.E.G., Deceased, by and through Douglas Getten, individually and on behalf of the Estate of E.E.G., and Jennifer Getten, *et al.,*<br><br>Respondents. | Case No. 1:26-cv-01919<br><br>United States District Court for the Western District of Texas Austin Division<br><br>(Removed From 459th Judicial District Court, Travis County, Texas) |

| | |
|---|---|
| CAMP MYSTIC, LLC; NATURAL FOUNTAINS PROPERTIES, INC.; MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.; and MYSTIC CAMPS MANAGEMENT, LLC,<br><br>Movants,<br><br>v.<br><br>COLE and ALLISON NAYLOR, Individually and as Representatives and Heirs of the Estate of V.W.N., *et al.,*<br><br>Respondents. | Case No. 1:26-cv-01923<br><br>United States District Court for the Western District of Texas Austin Division<br><br>(Removed From 459th Judicial District Court, Travis County, Texas) |
| CAMP MYSTIC, LLC; NATURAL FOUNTAINS PROPERTIES, INC.; MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.; and MYSTIC CAMPS MANAGEMENT, LLC,<br><br>Movants,<br><br>v.<br><br>E.P., DECEASED, by and through TIMOTHY PECK, Individually and on Behalf of the Estate of E.P., DECEASED MINOR, and MELISSA PECK, Individually and on Behalf of the Estate of E.P., DECEASED MINOR,<br><br>Respondents. | Case No. 1:26-cv-01922<br><br>United States District Court for the Western District of Texas Austin Division<br><br>(Removed From 459th Judicial District Court, Travis County, Texas) |

| | |
|---|---|
| CAMP MYSTIC, LLC; NATURAL FOUNTAINS PROPERTIES, INC.; MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.; and MYSTIC CAMPS MANAGEMENT, LLC,<br><br>Movants,<br><br>v.<br><br>WILL and CICI STEWARD, Individually and as Representatives of the Estate of C.S., A DECEASED MINOR,<br><br>Respondents. | Case No. 1:26-cv-01926<br><br>United States District Court for the Western District of Texas Austin Division<br><br>(Removed From 459th Judicial District Court, Travis County, Texas) |

**MOTION OF DEBTORS CAMP MYSTIC, LLC; NATURAL FOUNTAINS PROPERTIES, INC.; MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.; AND MYSTIC CAMPS MANAGEMENT, LLC TO TRANSFER VENUE OF PERSONAL INJURY TORT/WRONGFUL DEATH CLAIMS PURSUANT TO 28 U.S.C. § 157(b)(5)**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Camp Mystic, LLC; Natural Fountains Properties, Inc.; Mystic Camps Family Partnership, Ltd.; and Mystic Camps Management, LLC (collectively, "**Movants**" or the "**Debtors**") are debtors and debtors-in-possession in the jointly administered chapter 11 cases captioned above and pending in this District. By this Motion, Movants seek an order of this Court transferring venue of the five civil actions captioned above, now pending in the United States District Court for the Western District of Texas, to this Court pursuant to 28 U.S.C. § 157(b)(5). In support of this Motion, Movants would respectfully show the Court as follows:

## PRELIMINARY STATEMENT

1. The Debtors' chapter 11 cases were commenced because of the liabilities arising from the July 4, 2025 Kerr County historical flood. The five civil actions that are the subject of this Motion assert the largest claims against the Debtors and will principally determine the course of these bankruptcy cases, including the Debtors' ability to reorganize, the treatment of creditors' claims, the extent of available insurance coverage, and the formulation of any chapter 11 plan. As a result, the efficient administration of these bankruptcy cases depends on coordinating the resolution of those civil actions with the bankruptcy proceedings already pending in this District.

2. The Debtors are asking this Court to transfer venue of these personal injury tort and wrongful death claims from the U.S. District Court for the Western District of Texas to this Court, which is already overseeing the Debtors' chapter 11 bankruptcy cases. The Debtors are asking for this transfer pursuant to 28 U.S.C. § 157(b)(5). This is a specialized venue transfer provision that gives sole authority to determine the venue of personal injury tort and wrongful death claims against the debtor to the district court for the district in which a bankruptcy case is pending.

3. The claims at issue are wrongful death and survival claims arising from the deaths of twenty-two Camp Mystic campers and counselors. Those claims directly precipitated these chapter 11 cases and now constitute the largest body of claims against the bankruptcy estates. The lawsuits remain in their infancy. In several of the cases, written discovery was served on the Debtors and the Debtors responded. The Debtors served no written discovery in any of the cases. No depositions were noticed or taken. The Plaintiffs in one of the cases obtained a temporary injunction restricting the use of the Camp Mystic

property. Otherwise, virtually no substantive proceedings occurred before removal. Transferring the actions to this Court will therefore promote efficient case administration without resulting in waste of judicial resources, disrupting any significant progress in another forum, or imposing undue hardship on the Plaintiffs. For these reasons, the Debtors respectfully request that this Court transfer venue of the five actions to the Southern District of Texas pursuant to 28 U.S.C. § 157(b)(5).

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this proceeding under 28 U.S.C. §§ 1334 because the five civil actions that are the subject of this Motion are related to the Debtors' pending bankruptcy cases in this District.

5. Venue is proper in this District under 28 U.S.C. § 1409.

6. The basis for the relief requested is 28 U.S.C. § 157(b)(5), which provides that personal injury tort and wrongful death claims "shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."[1]

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A. The Lawsuits

7. Prior to the commencement of the Debtors' chapter 11 cases, five civil actions were filed against the Debtors in the Judicial District Court of Travis County, Texas, and are now pending before the 459th Civil District Court (the "**State Court**"):

[1] 28 U.S.C. § 157(b)(5).

- *Bellows, et al. v. Camp Mystic, LLC, et al.*, Cause No. D-1-GN-25-009963 (the "**Bellows Lawsuit**"), commenced November 10, 2025;[2]

- *Getten, et al. v. Natural Fountains Properties, Inc., et al.*, Cause No. D-1-GN-25-009976 (the "**Getten Lawsuit**"), commenced November 10, 2025;[3]

- *Naylor, et al. v. Camp Mystic, LLC*, et al., Cause No. D-1-GN-25-010016 (the "**Naylor Lawsuit**"), commenced November 10, 2025;[4]

- *Peck, et al. v. Camp Mystic, LLC, et al.*, Cause No. D-1-GN-25-009983 (the "**Peck Lawsuit**"), commenced November 10, 2025;[5] and

- *Steward, et al. v. Camp Mystic, LLC, et al.*, Cause No. D-1-GN-26-000758 (the "**Steward Lawsuit**"), commenced February 4, 2026.[6]

These five civil actions are referred to collectively in this Motion as the "**Lawsuits**."

8. The twenty-two (22) sets of plaintiffs[7] in the Lawsuits (the "**Plaintiffs**") assert claims arising from the deaths of twenty (20) Camp Mystic campers and two (2) counselors in Kerr County, Texas, in the floods that took place on July 4, 2025.[8] The claims for recovery in each of the Lawsuits are asserted as wrongful death or survival claims pursuant to chapter 71 of the Texas Civil Practice and Remedies Code.

---

[2] A copy of the *Original Petition* in the Bellows Lawsuit is attached hereto as **Exhibit 1**, and a copy of the *Intervenor's Original Petition* in the Bellows Lawsuit is attached hereto as **Exhibit 2**

[3] A copy of the *Second Amended Petition* in the Getten Lawsuit is attached hereto as **Exhibit 3**.

[4] A copy of the *Original Petition* in the Naylor Lawsuit is attached hereto as **Exhibit 4**.

[5] A copy of the *Original Petition* in the Peck Lawsuit is attached hereto as **Exhibit 5**.

[6] A copy of the *Original Petition* in the Steward Lawsuit is attached hereto as **Exhibit 6**.

[7] The Lawsuits include forty-one (41) individual plaintiffs across the five (5) cases, thirty-six (36) of whom are also acting jointly or individually as representatives of the decedents' estates.

[8] One of the campers, C.S., has not been found as of the date of this Motion. Her personal representative in the Steward Lawsuit has stated that she is presumed to be deceased. *Plaintiffs' Original Petition*, Steward Lawsuit, at p. 30.

## B. The Chapter 11 Cases

9. On June 24, 2026 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. The bankruptcy cases (the "**Chapter 11 Cases**") are being jointly administered under Case No. 26-90621 (CML).

10. On the Petition Date, the Debtors filed a *Suggestion of Bankruptcy* in each of the Lawsuits, advising the Civil District Court and the Plaintiffs that the Debtors had commenced their chapter 11 cases and that all further proceedings against the Debtors in the Lawsuits are enjoined by operation of the automatic stay. *See* 11 U.S.C. § 362(a).

11. Apart from the filing of the petitions, service on the defendants (including the Debtors), proceedings concerning motions to transfer venue and motions to compel arbitration under the Federal Arbitration Act,[9] none of which had been ruled on dispositively by the State Court as of the Petition Date, little, if any, substantive activity occurred in the Lawsuits prior to their removal. A scheduling order had been entered in the Naylor Lawsuit setting the matter for trial on November 9, 2027. Several of the other Lawsuits are likewise set for trial in late 2027.[10] Only written discovery propounded by some Plaintiffs had occurred and no dispositive motions had been filed in any of the Lawsuits. The only substantive matter determined by the State Court was the entry of an *Order Granting Temporary Injunction* in the Steward Lawsuit which (i) prohibits the State Court defendants, including the Debtors, from, e.g., altering, demolishing, repairing, remodeling, modifying, or using the Camp Mystic areas affected by

[9] 9 U.S.C. § 1, et seq.

[10] The Bellow Lawsuit is set for August 9, 2027, the Getten Lawsuit is set for September 13, 2027, and the Peck Lawsuit is set for October 11, 2027.

the July 4, 2025 Kerr County historical flood, until the resolution of the Steward Lawsuit, and (ii) set the Steward Lawsuit for trial on May 3, 2027.

### C. Removal of the Lawsuits

12. On July 13, 2026, the Debtors filed *Defendants' Notice of Removal* in the United States District Court for the Western District of Texas (the "**Western District Court**") for each of the State Court Lawsuits, pursuant to 28 U.S.C. § 1452, 28 U.S.C. § 1334(b), Federal Rule of Bankruptcy Procedure 9027, and W.D. Tex. L. Rule 9027-1. Copies of the *Notices of Removal* filed in each of the Lawsuits, excluding all of the attached State Court docket materials, are attached hereto as **Exhibit 7** (Bellows), **Exhibit 8** (Getten), **Exhibit 9** (Naylor), **Exhibit 10** (Peck), and **Exhibit 11** (Steward). As a result, the Lawsuits were assigned to the Civil Action numbers referenced in the case captions above and are now pending in the Western District Court.

13. The Debtors now seek an order under 28 U.S.C. § 157(b)(5) transferring venue of the Lawsuits from the Western District Court to this Court.

## LEGAL STANDARD

14. Section 157(b)(5) provides as follows:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.[11]

This provision gives a federal district court in which a bankruptcy case is pending broad authority to transfer personal injury tort and wrongful death litigation to that district, even if

[11] 28 U.S.C. § 157(b)(5).

the litigation was commenced in another district.[12] The district court in which the bankruptcy case is pending has exclusive authority to determine a motion to transfer venue under section 157(b)(5).[13]

15. A request under 28 U.S.C. § 157(b)(5) requires the court to make three determinations:

- First, whether the court has subject-matter jurisdiction over the claims that are the focus of the transfer request;[14]
- Second, whether the claims are personal injury tort or wrongful death claims within the meaning of the statute;[15] and
- Third, whether, in light of all the relevant facts, venue of the claims should be transferred.[16]

---

[12] *Baumgart v. Fairchild Aircraft Corp*., 981 F.2d 824, 833 (5th Cir.) (statute gives the district court in which the bankruptcy is pending "*added* power to order tried in its own venue personal injury tort and wrongful death claims filed elsewhere, or to order such cases tried in the districts where the claims arose.") (emphasis in original), *cert. denied*, 508 U.S. 973 (1993); *see also Murray v. Pan Am. World Airways, Inc. (In re Pan Am Corp.*), 16 F.3d 513, 516 (2d Cir. 1994) ("Congress enacted section 157(b)(5) to expand the district court's venue-fixing powers with an eye to centralizing the adjudication of a bankruptcy case.")

[13] *Pan Am*, 16 F.3d at 516 ("The [§ 157(b)(5)] transfer request should be made to the district court in the district where the bankruptcy is pending."); *Calumet Nat'l Bank v. Levine*, 179 B.R. 117, 120 (N.D. Ind. 1995) ("[B]oth the plain language and legislative history of section 157(b)(5) make clear that the district court of the bankruptcy district is the court that chooses between the two possible forums designated in the section. … Indeed, there seems little room for any other interpretation.").

[14] *See Arnold v. Garlock, Inc.,* 278 F.3d 426, 434 (5th Cir. 2001); *In re Dow Corning Corp*., 86 F.3d 482, 488 (6th Cir. 1996); *see also In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.,* 496 B.R. 256, 265–66 (D. Mass. 2013) (§ 157(b)(5) is not an independent source of subject-matter jurisdiction) (citing *Stern v. Marshall*, 564 U.S. 462, 478–82 (2011)).

[15] *See In re Gawker Media LLC*, 571 B.R. 612, 620 (Bankr. S.D.N.Y. 2017).

[16] *See Dow Corning*, 86 F.3d at 495.

## ARGUMENT AND AUTHORITIES

### A. This Court Has Subject-Matter Jurisdiction Over the Lawsuits Under 28 U.S.C. § 1334(b).

16. First, this Court clearly has subject-matter jurisdiction over the Lawsuits. Federal courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[17] While a bankruptcy case is pending, a proceeding is "related to" the case, and therefore federal subject-matter jurisdiction exists, if "the outcome of [the] proceeding could *conceivably* have any effect on the estate being administered in bankruptcy."[18] The Fifth Circuit has consistently interpreted the scope of "related to" jurisdiction broadly as encompassing any proceeding that "could conceivably have any effect" on the estate or that "could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate."[19]

17. The Lawsuits easily satisfy this standard. Each action asserts personal injury or wrongful death claims against the Debtors arising from the Kerr County historical flood of July 4, 2025, and each seeks substantial monetary damages from the Debtors. By asserting a right to payment from the Debtors, the Plaintiffs hold "claims" against the bankruptcy estates within the meaning of the Bankruptcy Code, regardless of the fact that those claims remain contingent, unliquidated, and disputed.[20]

---

[17] 28 U.S.C. § 1334(b).

[18] *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) (emphasis in original); *see also Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 585 (5th Cir. 1999).

[19] *See RDNJ Trowbridge v. Chesapeake Energy Corp. (In re Chesapeake Energy Corp.),* 70 F.4th 273, 281 (5th Cir. 2023); *Edge Petrol. Op. Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case),* 483 F.3d 292, 298 (5th Cir. 2007); *Arnold v. Garlock, Inc.,* 278 F.3d 426, 434 (5th Cir. 2001); *Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 752 (5th Cir.1995).

[20] *See* 11 U.S.C. § 101(5).

18. The Lawsuits are therefore indisputably "related to" the Chapter 11 Cases. Their resolution will directly determine the existence, amount, priority, and treatment of claims against the bankruptcy estates, thereby affecting the amount of estate assets available for distribution to all other holders of claims.[21] The outcome of the Lawsuits will necessarily impact the Debtors' liabilities, influence formulation and confirmation of any Chapter 11 plan, and affect distributions to creditors. Indeed, there is perhaps no category of litigation more closely connected to these Chapter 11 Cases than the very tort claims that precipitated the bankruptcy filings. The Debtors sought relief under Chapter 11 primarily because of the enormous potential liabilities asserted in the Lawsuits.[22]

19. Accordingly, there can be no serious dispute that this Court possesses "related to" jurisdiction under section 1334(b). The Lawsuits concern claims asserted directly against the Debtors and, by their very nature, will affect the allowance and amount of claims against the estates, the Debtors' aggregate liabilities, and the distribution available to all creditors. Because the resolution of the Lawsuits will inevitably influence the administration of the Chapter 11 Cases and the adjustment of the debtor-creditor relationship, the Lawsuits plainly fall within the broad scope of bankruptcy jurisdiction as the Fifth Circuit has repeatedly articulated.

---

[21] In addition to the State Court Plaintiffs, there are four other families who may assert personal injury tort and wrongful death claims against the Debtors arising out of the July 4, 2025 Kerr County historical flood. Indeed, three families that had not previously filed suit against the Debtors as of the Petition Date have appeared and participated in the Chapter 11 Cases.

[22] *See Declaration of Karen Nicolaou, Debtors' Proposed Chief Restructuring Officer, in Support of Chapter 11 Petitions and Second Day Motions*, Case No. No. 26-90621, ECF No. 45, at p. 3.

### B. The Causes of Action in the Lawsuits Are Personal Injury Tort or Wrongful Death Claims Subject to Section 157(b)(5).

20. Second, the causes of action asserted in the Lawsuits clearly are personal injury tort or wrongful death claims as those terms are used in section 157(b)(5). The Texas Wrongful Death Act (the "**TWDA**"), codified at chapter 71 of the Texas Civil Practice and Remedies Code, creates a statutory cause of action for certain family members to recover damages when another person's wrongful conduct causes a death.[23] The Texas statute also creates a survival claim for compensation for injuries suffered by the decedent.[24]

21. In each of the Lawsuits, the Plaintiffs assert claims for damages pursuant to the wrongful death and survival provisions of the TWDA. This is clear from the face of the operative pleadings:

- **Bellows Lawsuit**: Cause No. D-1-GN-25-009963, *Original Petition* **(Ex. 7)** at p. 29; *see also Intervenors' Original Petition* **(Ex. 8)** at pp. 16–17.
- **Getten Lawsuit**: Cause No. D-1-GN-25-009976, *Plaintiffs' Second Amended Original Petition* **(Ex. 9)** at pp. 38–40.
- **Naylor Lawsuit**: Cause No. D-1-GN-25-010016, *Plaintiffs' Original Petition* **(Ex. 10)** at p. 31.
- **Peck Lawsuit**: Cause No. D-1-GN-25-009983, *Plaintiffs' Original Petition* **(Ex. 11)** at p. 27.
- **Steward Lawsuit**: Cause No. D-1-GN-26-000758, *Plaintiffs' Original Petition* **(Ex. 12)** at pp. 97–98.

22. Section 157(b)(5) deals with the transfer of venue of "personal injury tort and wrongful death claims." Accordingly, one of the requirements for application of section

---

[23] *See* Tex. Civ. Prac. & Rem. Code § 71.002.

[24] *Id.* § 71.021.

157(b)(5) is that the claim must be a "personal injury tort" claim or a "wrongful death" claim.[25] Here, all of the claims asserted by the Plaintiffs fall into not just one category, but both.

23. The statute does not define "personal injury tort" or "wrongful death." Courts have developed three different approaches for identifying a personal injury tort for purposes of this statute—a narrow view, a broad view, and a middle or hybrid approach,[26] and the Fifth Circuit has not definitively ruled on the issue. Here, however, this Court does not have to engage in an extensive analysis of the three approaches, because the claims being asserted in the lawsuits are clearly personal injury tort claims, even under the narrow view. Under the narrow approach, a personal injury tort must involve actual physical injury or bodily trauma.[27] Without question, this describes the basis of all the claims asserted in the Lawsuits. All of the damages for which the Plaintiffs seek compensation derive from the physical injuries and deaths of the decedents in connection with the July 4, 2025 Kerr County historical flood. Accordingly, it is indisputable that the Plaintiffs' claims are personal injury claims as that term is used in section 157(b)(5).

---

[25] 28 U.S.C. § 157(b)(5). From the earliest circuit court applications, courts have read the plain language of § 157(b)(5) in the disjunctive, as applying to any claim that is *either* a "personal injury tort" claim *or* a "wrongful death" claim. *See Roberts v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 45 B.R. 823, 825 (2d Cir. 1984) (analyzing § 157(b)(5) in regard to a personal injury claim that was not a wrongful death claim); *see also Arnold v. Garlock, Inc.,* 278 F.3d 426, 430 n.2 (5th Cir. 2001) (analyzing § 157(b)(5) in regard to personal injury claims of living plaintiffs).

[26] *See In re Pilgrim's Pride Corp*., 803 F. Supp. 2d 591, 593 n.2 (N.D. Tex. 2011) (discussing the three approaches).

[27] *Belcher v. Doe*, No. AP 06-05005-RBK, 2008 WL 11450550 at *2 (W.D. Tex. Mar. 11, 2008), *aff'd as modified sub nom. In re Belcher*, No. 08-50335, 2009 WL 260573 (5th Cir. Feb. 4, 2009).

24. The Plaintiffs' claims are also wrongful death claims. "'Wrongful death' refers to '[a] death caused by a tortious injury.'"[28] As stated above, the Plaintiffs assert claims for damages under the wrongful death and survival provisions of the TWDA, which claims arise from the deaths of the decedents. The Plaintiffs allege that the defendants engaged in tortious acts and omissions that caused or contributed to the decedents' deaths. Without question, the Plaintiffs' claims are wrongful death claims within the usage of section 157(b)(5).

25. For these reasons, the Plaintiffs' claims qualify as both personal injury tort claims and wrongful death claims that are subject to the venue transfer provision of section 157(b)(5).

## C. In Light of All the Relevant Facts, Transfer of Venue of the Lawsuits to the Southern District of Texas Pursuant to Section 157(b)(5) Is Appropriate.

### *1. Section 157(b)(5) Was Enacted to Centralize Personal Injury and Wrongful Death Litigation.*

26. Finally, with this Court having subject-matter jurisdiction over the claims asserted in the Lawsuits, and the claims being personal injury tort claims and wrongful death claims, the Court should transfer venue of the Lawsuits to this district, the district in which Movants' chapter 11 cases are pending. Congress's purpose by enacting section 157(b)(5) was to "centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'"[29] As the Sixth Circuit observed:

---

[28] *In re Gawker Media, LLC*, 571 B.R. 612, 621 (Bankr. S.D.N.Y. 2017) (quoting Bryan A. Garner, Black's Law Dictionary 485 (10th ed. 2014)).

[29] *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994, 1011 (4th Cir. 1986) (quoting 180 Cong. Rec. H 7492, June 29, 1984, *reprinted in* 1984 U.S. Code Cong. & Adm. News at 579.); *see also Dow Corning*, 86 F.3d at 496; *Pan Am*, 16 F.3d at 516.

> Centralization of claims increases the debtor's odds of developing a reasonable plan of reorganization which will "work a rehabilitation of the debtor and at the same time assure fair and non-preferential resolution of the . . . claims."[30]

Here, transfer of the Lawsuits to the Southern District of Texas in accordance with section 157(b)(5) will serve the statutory purpose of centralizing the critical proceedings relating to the Chapter 11 Cases in a single forum without imposing undue hardship on the Plaintiffs or any other party in interest.

#### ***2. Transferring Venue of the Lawsuits to the Southern District of Texas Is Necessary and Appropriate for the Purpose of Judicial Economy Because Transfer Will Centralize the Wrongful Death Litigation With the Chapter 11 Cases.***

27. Determining a section 157(b)(5) request is a fact-specific inquiry with special focus on judicial economy and the benefit of centralizing the determination of substantial claims in the venue where the bankruptcy cases are pending.[31] Here, the Court has a choice between two venues for the Lawsuits: the Western District of Texas, where the Plaintiffs' claims arose[32]; and the Southern District of Texas, where the Chapter 11 Cases are pending.[33] The Western District has no connection to the Chapter 11 Cases and no history or familiarity with the Lawsuits or the underlying issues therein. Additionally, no substantive proceedings have occurred in the Western District since removal of the Lawsuits; therefore, transfer of the

---

[30] *Dow Corning*, 86 F.3d at 496 (quoting *A.H. Robins,* 788 F.2d at 1011).

[31] *See Dow Corning*, 86 F.3d at 496; *see also Marks v. Outboard Marine Corp.,* 974 F. Supp. 406, 410 (D.N.J. 1997) ("judicial economy … is at the heart of section 157(b)(5)").

[32] The plaintiffs' claims arose in Kerr County, Texas, which falls within the San Antonio Division of the United States District Court for the Western District of Texas. https://www.txwd.uscourts.gov/court-information/jurisdiction-and-venue/

[33] 28 U.S.C. § 157(b)(5).

Lawsuits at this time would not result in any waste of judicial resources. In short, the Western District has no connection to the Chapter 11 Cases or the Lawsuits and allowing them to remain in the Western District would not serve the important public policy of judicial economy.

28. Resolution of the five Lawsuits is central to every aspect of the Chapter 11 Cases. The commencement of the Lawsuits, and the resulting financial strain and uncertainty, directly precipitated the Debtors' chapter 11 filings.[34] As a group, the Plaintiffs constitute the largest creditor constituency in the Chapter 11 Cases, and the resolution of their claims will largely determine the course of the Chapter 11 Cases. Among other things, the Lawsuits will affect the scope of insurance coverage, the assets available for distribution to other creditors, viable options for a plan of reorganization, and numerous other issues concerning the administration of the estates. Because the outcome of the Lawsuits will directly affect the rights and recoveries of creditors and other parties in interest, the interests of judicial economy, consistent and non-preferential adjudication, and efficient administration of the estates are best served by having this Court, which is already presiding over the Chapter 11 Cases, oversee the resolution of the Plaintiffs' claims.

***3. Transferring Venue of the Lawsuits to the Southern District of Texas Will Not Impose an Undue Hardship on the Plaintiffs.***

29. Courts faced with a section 157(b)(5) request also consider the convenience of the parties and whether transferring venue would work an undue hardship on the claimants.[35]

---

[34] *See Declaration of Karen Nicolaou, Debtors' Proposed Chief Restructuring Officer, in Support of Chapter 11 Petitions and Second Day Motions*, Case No. No. 26-90621, ECF No. 45, at p. 3.

[35] *In re Collins & Aikman Corp.,* No. 08-14801, 2009 WL 4646097 at * 1 (E.D. Mich. Dec. 7, 2009) ("[I]n choosing a forum under § 157(b)(5), the courts have found it appropriate to balance the interests of the claimant against the need to avoid undue interference with the efficient administration of the bankruptcy estate.")

Here, transferring venue of the Lawsuits to the Southern District would not impose a significant burden on the Plaintiffs. Of the twenty-two (22) sets of Plaintiffs, fully half (or 11 sets) are residents of Harris County, Texas. Five (5) sets of Plaintiffs are Dallas County residents, four (4) sets are Travis County residents, one (1) set are Bexar County residents, and one (1) set are Austin County residents.[36] Accordingly, to transfer the Lawsuits from the Western District Court to this Court, sitting in Harris County, will actually make it less burdensome for more of the Plaintiffs to attend and participate in the proceedings in person.

30. Because of the Debtors' chapter 11 filings, the Plaintiffs must participate in the bankruptcy-related proceedings in the Southern District of Texas in any event, including by filing proofs of claim, responding to potential claim objections or other motion practice, addressing insurance issues, and voting on a proposed plan of reorganization. Indeed, the Plaintiffs, along with two similarly situated families, have already begun participating as an Ad Hoc Group represented by counsel.[37] Another family affected by the Camp Mystic flooding event has also participated in the Chapter 11 Cases through counsel.[38] Their participation in proceedings in the Southern District is already unavoidable. Transferring the related wrongful death claims to the Southern District simply aligns the litigation with the bankruptcy process already underway, will result in the consistent treatment of all similarly

---

[36] Residency information is drawn from the locations of residence stated by the Plaintiffs in their State Court petitions in the Lawsuits.

[37] *See* ECF 21, 22, and 55 in the Chapter 11 Cases. The Ad Hoc Group includes the twenty-two sets of Plaintiffs and two other families (the Baker and Marsh families) who had not filed suit against the Debtors prior to the Petition Date.

[38] Although counsel for the Lawrence family has not filed a formal notice of appearance, he appeared at the first two hearings in the case on their behalf (see ECF 48 and 66).

situated families, regardless of whether they filed suit prior to the Petition Date, and does not impose any additional burden on the Plaintiffs.

## CONCLUSION

WHEREFORE, Movants request that the Court enter an order transferring venue of the Lawsuits to the Southern District of Texas pursuant to section 157(b)(5), and granting such other and further relief to which Movants may be justly entitled.

Dated: July 15, 2026

Respectfully submitted,

*/s/ Jeff P. Prostok*

Martin Sosland (State Bar No. 18855645)
Candice M. Carson (State Bar No. 24074006)
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
2200 Ross Avenue, Suite 4600W
Dallas, Texas 75201
Telephone: (469) 654-1340
Email: martin.sosland@vkhh.com
candice.carson@vkhh.com

- and –

Jeff P. Prostok (State Bar No. 16352500)
Suzanne K. Rosen (State Bar No. 00798518)
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Telephone: (817) 214-4990
Email: jeff.prostok@vkhh.com
suki.rosen@vkhh.com

*Proposed Counsel to Debtors and Debtors-in-Possession*

## CERTIFICATE OF CONFERENCE

I hereby certify, in accordance with Rule 7.1D of the Local Rules of the United States District Court for the Southern District of Texas, that on July 13, 2026, I conferred by telephone with counsel of record for Respondents in the Chapter 11 Cases regarding the relief requested in this Motion. I further certify that on July 15, 2026, I contacted counsel of record for the Plaintiffs in the State Court Lawsuits via email regarding the relief requested in the Motion.

On July 15, 2026, Christina Yarnell, counsel for the Plaintiffs in the *Steward* Lawsuit responded and advised that they are opposed to the relief requested in the Motion. As of the filing of this Motion, I have not received any response from counsel for Plaintiffs in the other Lawsuits and the Motion is therefore presumed to be opposed by them. If I subsequently learn that the Plaintiffs in the *Bellows*, *Getten*, *Naylor*, and *Peck* Lawsuits do not oppose the relief requested in the Motion, I will file an supplemental certificate of conference.

*/s/ Jeff P. Prostok*
Jeff P. Prostok

## CERTIFICATE OF SERVICE

I certify that on July 15, 2026, a true and correct copy of the foregoing document was served via email and first class mail, postage prepaid, upon (i) counsel of record for the Plaintiffs and Defendants in the State Court Lawsuits; (ii) the Office of the U.S. Trustee for the Southern District of Texas; (iii) the holders of the thirty (30) largest unsecured claims against the Debtors in the Chapter 11 Cases; and (iv) all parties that have requested notice under Bankruptcy Rule 2002.

*Jeff P. Prostok*
Jeff P. Prostok